SAVIN CORPORATION, a Delaware Corporation, Plaintiff,

v.

NATIONAL TONER WAREHOUSE, INC., a Georgia corporation, d/b/a Eastern Technologies and Delta Chemical; Capital Chemical, Inc., an Illinois corporation, Had, Inc., an Illinois corporation, d/b/a/ Franklin Laboratories; United Toner Company, an Illinois corporation, d/b/a Midstate Chemical Co.; J. D. & Associates, Inc., an Illinois corporation; James Alden Hall, individually, and Dennis Michael Fader, individually, Defendants.

Civ. A. No. C80–897A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 18, 1981.

638

Virginia Taylor, Miles Alexander, Jerre B. Swann, Atlanta, Ga., Donald H. Rivkin, Mary C. Carty, New York City, for plaintiff.

Gary Jackson, Atlanta, Ga., Anthony Erbacci, Chicago, Ill., for defendants.

ORDER OF COURT

HORACE T. WARD, District Judge.

This is an action for trademark infringement, unfair competition, false advertising and other unfair business practices. The case is presently before the court on plaintiff's motion for partial summary judgment on certain claims under common law, state law, and Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and § 1125(a). Plaintiff also seeks the injunctive relief available under state law and Section 34 of the Lanham Act, 15 U.S.C. § 1116, and an accounting for profits and attorney's fees available under state law and Section 35 of the Lanham Act, 15 U.S.C. § 1117. The issue of damages (actual, treble and punitive) is expressly excepted from plaintiff's motion. In addition, plaintiff seeks to hold defendants in contempt of a consent injunction entered against them in the Northern District of Illinois in November, 1978.

## I. The Motion for Summary Judgment

The plaintiff supports the motion for summary judgment by relying on the pleadings, depositions, affidavits, interrogatories and requests for production of documents filed in this action along with the responses of each defendant. Defendants' answer to plaintiff's motion appears to contend that material presented in support of plaintiff's motion creates issues of fact, and a trial is warranted. However, the defendants have not set forth specific facts showing that there is a genuine issue for trial. The record is well-developed and the material facts from which the instant action arose are not in genuine dispute. Defendants' answer is actually an objection to the legal conclusions that plaintiff asserts should be drawn from the material facts. In this regard, defendants fail to recognize that on a motion for summary judgment, the trial court is obligated to examine all the evidence and draw therefrom all reasonable inferences. *See, e.g., Beef/Eater Restaurants, Inc. v. James Burrough Lmtd.*, 398 F.2d 637, 639 (5th Cir. 1968); *Rolls-Royce Motors Ltd. v. A & A Fiberglass, Inc.*, 428 F.Supp. 689, 694 (N.D.Ga.1976). The plaintiff has produced a wealth of information to support its position, and the record is thoroughly documented. Thus, the court may proceed to determine whether plaintiff's evidence warrants summary judgment. The alternative process of a trial based on the same evidence would waste judicial resources and impose undue burdens on the litigants.

Based on the Findings of Fact and Conclusions of Law below, the court holds that there is no substantial question of fact or law which precludes a judgment in favor of plaintiff on its claims under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and § 1125(a). Since the court holds that the defendants violated federal law, the court does not reach plaintiff's state and common law claims.

## A. FINDINGS OF FACT

1.

Plaintiff Savin Corporation is engaged in the marketing of photocopying machines and supplies, and owns the SAVIN tradename, and the trademarks and service marks SAVIN and SAVIN logotype for photocopiers and supplies. The registrations have become incontestable. Plaintiff owns common law rights to the "T–D Pak" name used to identify packaging of toner and dispersant.

2.

The defendants are two individuals, Hall and Fader, and various corporations which they own and control either directly or through intermediate corporate entities. Defendants National Toner Warehouse, Inc., Capital Chemical, Inc., United Toner Co., and Had, Inc. (hereinafter referred to as the Toner Companies) are corporations wholly owned and controlled by defendants Fader and Hall. Defendant National Toner Warehouse, Inc. is a Georgia corporation with its principal place of business in Georgia. Defendants Capital Chemical, Inc. and Had, Inc. are Illinois corporations with their principal places of business in Illinois. Defendant United Toner Company is an Illinois corporation with its principal place of business in Maryland.

3.

The Toner Companies sell photocopier chemicals for use in SAVIN copying machines by means of long distance phone calls to the offices of owners or lessors of photocopying equipment.

4.

Defendants are subject to a permanent injunction obtained by plaintiff in prior litigation in the United States District Court for the Northern District of Illinois. That consent decree reads in pertinent part as follows:

Defendants and their affiliates and subsidiary companies, their officers, agents, servants, employees, and all persons acting in concert or participation with them, be and they hereby are permanently restrained and enjoined:

1. From representing themselves to customers or potential customers to be employees, authorized dealers, fran-

chisees or licensees of SAVIN in connection with the sale, offering for sale, distribution, advertising or promotion of toner or dispersant, or otherwise in the photocopying business;

2. From representing by words or conduct that any product made, offered for sale, sold or distributed by them or that any services offered for sale, sold, advertised or rendered by them, is authorized, sponsored or endorsed by, or otherwise connected with SAVIN;

3. From passing off their toner and dispersant as that of SAVIN;

4. From any conduct which will cause, or is likely to cause, confusion, mistake or misunderstanding as to the source of the products sold by them; and

5. From any conduct which will cause, or is likely to cause, confusion, mistake or misunderstanding as to any affiliation, connection, or association of the products sold by them with the products sold or distributed by SAVIN.

5.

Defendants made no change in their standardized selling methods or their sales pitch after entry of the injunction in the prior litigation with Savin, and did not advise their managerial employees or sales persons of the injunction.

6.

Telephone salespersons employed by the Toner Companies use false names which defendants state are a means of "internal control." The sales technique prescribed in defendants' sales manual is delivered by salespersons. The defendants state that the technique is designed to sell the most product with the least amount of resistance and maximum motivation.

7.

The defendants' prescribed sales technique includes false statements. Salespersons falsely state that (i) a nearby customer has rejected a shipment of chemicals, (ii) the potential purchaser could be sent the chemicals from the nearby location, (iii) the purchaser will receive a discount if he helps out the caller by purchasing, (iv) the price of the chemicals they sell is a "discount" from a "list price." In fact, all orders are shipped from a central warehouse, and a "list price" is never changed. There is a standard price that is higher than that charged by plaintiff for its T–D Paks.

8.

Defendants prescribed procedure involves obtaining the brand name, model number of the office copier and authorized purchaser's name from the receptionist. The salesperson asks to speak to the person authorized to purchase supplies. The salesperson says, "Hi CUSTOMER'S FIRST NAME, this is [SALESPERSON'S] NAME, with _____ Chemical Company. I am calling from our warehouse about your NAME OF MFG.; machine, you know the photocopier." Script of Sales Presentation, Silverman Affidavit, Exhibit A.

9.

Defendants' sales procedure does contain a reference to the fact that the supplies are those of a particular manufacturer. In the context of telling the false story of the "nearby customer," the caller states that he sent ". . . the Winston/Rexco Toner, NOT THE XEROX TONER, you know, its the ink you pour in your machine."

10.

The sales presentation includes a disclaimer that is made subsequent to answering any objection of the caller to purchasing, and in the context of a few closing sentences regarding a discount. The sales presentation disclaimer reads as follows: "Now in order to get you the warehouse price, this will be coming over from us, _____ Chemical Company, remember we're not affiliated with O.E.M.; ORIGINAL EQUIPMENT MANUFACTURER."

11.

Of 305 complaint letters from defendants' customers produced during discovery, 40 letters stated that the salesperson claimed to represent Savin or claimed that Savin

chemicals would be shipped, or claimed that the product was approved by Savin. Twenty-two letters stated that the salesperson had claimed to be their normal supplier, and 30 letters in general showed that customers believed that there had been misrepresentations. The summary of complaints does not count letters from customers who purchased supplies for use with brands of photocopying machines other than Savin.

12.

The Toner Companies verify orders by using a standard "verification pitch," which contains a "disclaimer" of affiliation with Savin or the pertinent original equipment manufacturer. The "disclaimer" is made just after confirming the order and just before a few closing sentences regarding a discount. The verification pitch disclaimer reads as follows: (Although, we're not affiliated with <u>Xerox/or machine mfg.</u>, we are a National Distributor of the <u>BRAND TONER</u>, manufactured by <u>MANUFACTURER NAME</u>, for use specifically in the <u>Xerox/or type of copier, #.</u>) Disclaimers are not made when a reorder by a former customer is verified.

13.

Of 231 forms identified by defendants as cancelled orders, at least 163 indicated that the purchaser wished to purchase only genuine Savin chemicals and/or had believed the salesperson to be affiliated with the local photocopy supply dealer or another company or was otherwise confused. Defendants admit that approximately 50% of the orders obtained by salespersons are cancelled at the stage of verification.

14.

The sales presentation creates a general impression on the potential purchaser that Savin or SAVIN products are involved, and that the caller is a supplier with whom the purchaser has previously done business.

15.

Copies of some of defendants' invoices that accompany shipments of chemicals to customers use the terms Savin or T–D Pak to identify the invoiced goods. Specifically, those invoices are typed in to read: "T–D Paks Savin" and "Toner Savin." There is an address and the name Eastern Technologies printed in the left hand corner of the invoice. It is not clear, as the defendants contend, that the trademark names are used only to indicate the machine for which the toner is to be used.

16.

Until May or June of 1980, defendants sold their toner and dispersant in boxes prominently displaying the name Savin along with the "®" symbol, and the name "T–D Pak." An examination of photographs shows that the boxes used by defendants are markedly similar in color, style and prominence of display to plaintiff's boxes. In May of 1980, plaintiff entered into an agreement with defendants' supplier under which plaintiff agreed to forbear from pursuing a trademark infringement/unfair competition action in consideration of destruction of the inventory of boxes and containers and an agreement not to use the Savin trademark in its packaging in the future. Also in May of 1980, defendant National Toner Warehouse ordered red stickers to apply to boxes for purposes of identifying the manufacturer as "Esgraph, Fairfield, N. J." Defendants ceased distributing the boxes when they could not be obtained from the supplier.

## B. CONCLUSIONS OF LAW

1.

Plaintiff, as owner of uncontestable registrations, is entitled to the protection furnished by the following provisions of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1):

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

### 2.

■ Defendants used a colorable imitation of plaintiff's registered trademark on boxes and such use violates the "likelihood of confusion" standard of infringement under the Lanham Act, 15 U.S.C. § 1114(1).

■ The "likelihood of confusion" is determined by evaluating a variety of factors such as similarity of mark, product and purchasers, the intent of defendants, and actual confusion. *See, Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975). Application of the factors to the undisputed material facts establishes the existence of infringement. There is similarity in the form, style and color of the trademark used prominently on the boxes which enclose the same products to be sold to the same class of customers. There is evidence of intent to appropriate good will associated with the mark due to defendants' failure to change any selling practices after entry of the prior injunction or to advise managerial employees and salespersons of the injunction. Proof of intent to deceive is not required to show likelihood of confusion, but evidence of intent is some of the strongest evidence available that confusion is likely. *Ken-*

*tucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977). There is also evidence on actual confusion introduced through customer complaint letters and customer affidavits. Proof of actual confusion is not required to show likelihood of confusion, but evidence of actual confusion is the strongest support for likely confusion. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971). Finally, defendants cannot avoid liability by pointing to the agreement between plaintiff's and defendants' supplier to discontinue manufacturing and distributing the boxes. The plaintiff is entitled to protection from participants in acts accomplishing unlawful purposes. *See, e.g., Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 499–500 (S.D.N.Y.1968); Restatement of Torts, §§ 738, 739 (1938). It cannot be seriously contended that defendants' acts fall outside the "use in commerce . . . in connection with the sale . . ." language of the Act.

### 3.

■ Plaintiff is entitled to the protection furnished by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a):

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or use in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

4.

Defendants' use of plaintiff's mark on boxes and invoices, and defendants' sales presentation constitutes use of a false designation of origin and false description or representation in connection with goods in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

To establish that defendants' use of plaintiff's mark on invoices and manner of sales presentation warrants a decision of liability, plaintiff must demonstrate that a false designation or description has a tendency to deceive the customer. *See, Boston Pro. Hockey Ass'n. v. Dallas Cap. & Mfg., Inc.,* 510 F.2d 1004, 1013 (5th Cir. 1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Even if technically true, a representation that may tend to create a false impression is a violation of the Act. *See, e.g., American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 n.3 (2d Cir. 1978).

The decision that the defendants' use of plaintiff's mark on boxes is likely to cause confusion applies with equal force under § 1125(a).

With regard to the defendants' use of the plaintiff's mark on invoices, the court holds that such use to identify invoiced goods has a tendency to deceive the purchaser. The central placement and use of terms leads to the logical and incorrect belief that the goods are associated with plaintiff. Defendants appear to argue that the appearance in the corner of the name of the invoicing party avoids liability. However, this argument is to no avail since it functions as a device for trading upon the reputation of another on one hand and proclaiming innocence on the other. *See, e.g., Invica Plastics (U.S.A.) Ltd. v. Mego Corp.* (No. 79 Civ. 0780, S.D.N.Y., Dec. 9, 1980).

With regard to the defendants' sales presentation, it must first be noted that salespersons' claims that defendants' goods are offered at a discount price to avoid reshipment of a refused order from a nearby location are all false. Secondly, the script of the sales presentation supports plaintiff's claim and the court's finding that purchasers are deceived. Complaint letters serve as further evidence of confusion. The "disclaimer" does not avoid liability. As in invoicing, such a result would allow trading on the reputation of another. Defendants appear to argue that their counterclaim plays a role in the determination of whether plaintiff is entitled to succeed in its claim that the public is deceived. Defendants contend that there is a pattern of disparagement and that plaintiff has misrepresented to purchasers that any toner except that manufactured by plaintiff will give poor results. There have been no affidavits filed in support of this contention. In any case, even if the counterclaim as alleged is true, it does not go to the issue of customer confusion or defendants' false designation of origin, false description or representation.

In sum, an evaluation of the evidence shows a tendency to deceive customers. Accordingly, the court holds that defendants' use of plaintiff's mark on boxes and invoices, and defendants' sales presentation constitute a violation of 15 U.S.C. § 1125(a).

## II. The Request for a Permanent Injunction and Contempt of the Prior Decree

Where, as here, the likelihood of public confusion is shown, the plaintiff is entitled to injunctive relief under Section 34 of the Lanham Act, 15 U.S.C. § 1116. *See, e.g., P.G.A. v. Bankers Life & Casualty Co.,* 514 F.2d 665 (5th Cir. 1975). Similarly, where the prohibitions against false designation and false description under Section 43(a) are violated, the plaintiff is entitled to injunctive relief under 15 U.S.C. § 1125(a) and § 1114(1). *Boston Professional Hockey Ass'n., Inc. v. Dallas Cap & Emblem Mfg.,* 597 F.2d 71 (5th Cir. 1979). The court's order of injunction filed simultaneously herewith, sets forth provisions that permanently restrain and enjoin the defendants.

It appears that defendants have violated the provisions of the prior decree. However, it also appears that a civil contempt proceeding is a trial, and the resolution of issues may require a hearing. *See Hoff-*

*man, etc. v. Beer Drivers & Salesman's, etc.,* 536 F.2d 1268 (1976). Accordingly, the court will defer ruling on this motion.

### III. An Accounting for Profits

A prevailing plaintiff under the Lanham Act may be awarded monetary relief in the form of an accounting for profits under Section 35 of the Lanham Act, 15 U.S.C. § 1117. Plaintiff seeks an accounting for the profits derived by defendants from the sale of photocopier chemicals in boxes bearing the trademark SAVIN during the period between entry of the prior injunction on November 17, 1978, and the discontinuation of such packaging. The precise date of discontinued use is not clear, and plaintiff contends that it is not earlier than June 5, 1980, at which time defendant placed a second order for stickers to apply to boxes.

■ In *Maltina Corp. v. Cawy Bottling Co., Inc.,* 613 F.2d 582, 585 (5th Cir. 1980), the court quoted with approval from *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656 (2d Cir. 1970). That case held that an accounting should be granted even where injunctive relief is also granted, "if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again." *W.E. Basset Co., supra* at 664. The Court held that a diversion of sales is not a prerequisite to an award of an accounting. Defendants have used the markholder's property in violation of the injunction and the Lanham Act and have been unjustly enriched. Thus, equitable concepts and the public interest could be the basis for finding that an accounting is one measure of recovery available to plaintiff. However, the defendants have still pending a counterclaim that alleges a pattern of disparagement of goods by plaintiff. That claim could not act as a shield to summary judgment on the merits of the infringement suit, but it is related to the equity and public interest factors underlying the recovery sought through an accounting. Moreover, the court is reluctant to call into play the often burdensome process of proof in an accounting before all of the possible relevant information is available for guidance. Accordingly, decision on plaintiff's motion for an accounting is DEFERRED pending resolution of the issues raised in the counterclaim or until such time as may be determined by further memoranda from the parties or further order of this court.

### IV. Interim Attorney's Fees

■ Plaintiff seeks an award of attorney's fees pursuant to 15 U.S.C. § 1117. Cases decided under § 16 of the Clayton Act state that interim awards may be granted prior to final judgment where plaintiff has substantially prevailed. *See, e.g., Harnischfeger Corp. v. Pacar, Inc.,* 503 F.Supp. 102 (E.D.Wisc.1980). Extensive discovery to prepare the thoroughly documented motion for summary judgment by plaintiff avoided the expense and use of court time that would be involved in a hearing for preliminary injunction. Plaintiff is prepared to present evidence to establish fees in connection with those discovery efforts. Defendants have violated the Lanham Act and the terms of a prior injunction, and the case is "exceptional." *See generally, Armstrong Cork Co. v. Armstrong Plastic Covers Co.,* 434 F.Supp. 860 (E.D.Mo.1977). Plaintiff is unquestionably an injured party, and the counterclaim is not sufficiently related to plaintiff's claim for fees to warrant à delay. Accordingly, plaintiff's request for attorney's fees is granted. Plaintiff is directed to file an affidavit for purposes of this recovery.

In sum, plaintiff's judgment on the federal claims as described and discussed in this order is GRANTED, it appears that defendants have violated the terms of a prior decree and the court's order of injunction is filed simultaneously herewith, a decision on plaintiff's motion for an accounting for profits is DEFERRED, and plaintiff is GRANTED an interim award of attorney's fees and is DIRECTED to file an affidavit computing this recovery.

### INJUNCTION

The above-captioned action came before this court on the plaintiff's motion for con-

tempt sanctions and partial summary judgment, and the court granted the motion for summary judgment and deferred ruling on the motion on contempt for the reasons stated in its Order entered December 18, 1981.

Therefore, it is hereby ORDERED that defendants and their affiliates and allied and subsidiary companies, their officers, agents, servants, employees and all persons acting in concert or participation with them, be and they hereby are permanently RESTRAINED and ENJOINED:

1. From representing themselves to customers or potential customers to be employees, authorized dealers, distributors, franchisees, representatives, affiliates or licensees of SAVIN in connection with the sale, offering for sale, distribution, advertising or promotion of toner or dispersant for photocopying machines, or otherwise in the photocopying business;

2. From representing by words or conduct that any product made, offered for sale, sold or distributed by them or that any service offered for sale, sold, advertised or rendered by them, is authorized, sponsored, licensed or endorsed by, or otherwise connected with SAVIN.

3. From making any express or implied representation of fact which persons or businesses hereby enjoined know or have reason to know to be untrue or likely to cause confusion, mistake or misunderstanding.

4. From making any solicitations of purchases by telephone, in person or in any writing that do not disclose the identity of the manufacturer of the goods being offered for sale and that do not specifically represent to the customer or potential customer that such goods are neither manufactured by SAVIN nor by anyone licensed or authorized to manufacture such goods for or on behalf of SAVIN and inform the customer or potential customer of the business name and business location of the company soliciting the purchase.

5. From preparing or transmitting any shipping documents, invoices or other writings furnished to defendants' customers that do not indicate the manufacturer of any goods sold to the customer in such a manner as to clearly disclose that the products in question are not manufactured, authorized or licensed by SAVIN in any transaction involving the sale of goods that defendants represent to customers are suitable for use in SAVIN brand photocopying machinery or other SAVIN products.

6. From using any packaging materials unless such packaging materials clearly disclose the name of the manufacturer of the goods. To the extent that the use of the brand name and model numbers of SAVIN photocopy machines may be necessary to identify the type of machine for which defendants' goods are intended to be used, in no event shall any SAVIN mark be used in any manner that suggests or implies authorization, sponsorship, approval, licensing or other endorsement by SAVIN of any non-SAVIN product or service.

Within thirty (30) days following the entry of this Injunction, defendants shall file with the court and serve upon counsel for SAVIN a report with respect to all steps taken by defendants to comply with the terms of this Injunction. In reporting on compliance, defendants shall furnish to the court and to counsel for SAVIN a copy of any standardized sales presentation or sales confirmation used by any of the defendants after the entry of this Injunction, a sample of all packaging used by defendants following entry of this Injunction that is intended to be used in connection with goods sold by defendants for use in SAVIN brand photocopying machinery and examples of all invoices or other shipping forms used by defendants. Additionally, the defendants have thirty (30) days to show cause why the presently uncontradicted facts should not allow the court to grant plaintiff's motion for contempt without the need for an oral hearing.