**WORLD CARPETS, INC., Plaintiff-Appellee,**

v.

**DICK LITTRELL'S NEW WORLD CARPETS, Joseph E. Russell et al., Defendants-Appellants.**

**No. 29873.**

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1971.

Yale B. Griffis, Dallas, Tex., for defendants-appellants.

V. Bryan Medlock, Jr., D. Carl Richards, Richards, Harris & Hubbard, Dallas, Tex., for plaintiff-appellee.

Before JONES, GEWIN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

World Carpets, Inc., a Georgia corporation engaged in the manufacture and wholesale distribution of carpets (hereinafter World Carpets), brought this action for infringement of two United States trademark registrations of the mark WORLD against a group of Dallas, Texas carpet retailers (hereinafter collectively,, the New World group or New World), who were using the words NEW WORLD CARPETS in the trade name of their businesses. We hold the mark WORLD as applied to World Carpets' goods is not primarily geographically descriptive and therefore is a validly registrable term. We determine the district court correctly found, under the uncon-

troverted facts, confusing similarity between trademarks used by the parties. We affirm the grant of injunctive relief and remand for further proceedings as to damages.

## I. BACKGROUND AND ISSUES

In 1954, World Carpets first started to use the trademark WORLD in connection with its carpeting products. In 1962, the first of two trademark registrations was obtained from the United States Patent Office. This initial registration was this design:

In 1965, World Carpets obtained a second trademark. The form of this later mark is:

Using these forms of the trademark WORLD, World Carpets has distributed its product to retailers from an interstate network of wholesale subsidiaries, including one located in Dallas, Texas. WORLD was prominently and frequently displayed by World Carpets as part of a comprehensive advertising program aimed at both the retail and wholesale market. Not only did the name appear in the advertisements of well known, nationally circulated publications, but the trademark was also used on tags attached to carpeting, on various miscellaneous business forms, such as invoices, bills of lading and stationery, and on point-of-purchase display items such as clocks, which were provided to retailers of its products.

As late as July, 1965, Contract Carpets, Inc., one of the New World group was selling carpets manufactured by World Carpets bearing the trademark WORLD. In August, 1967, the New World group conducted a contest to choose a new name for all of their retail carpet operations. The name selected comprised two words, NEW WORLD, and its use in the Dallas carpet market commenced on September 9, 1967. The design of New World's trademark appeared in Dallas newspapers in more than one form, but the following example is representative:

All reproductions of the trade name prominently featured the words NEW WORLD CARPETS accompanied by a globe with latitudinal and longitudinal lines. In addition to the newspaper media, further advertising, employing NEW WORLD was broadcast over two Dallas radio stations as part of a campaign designed to stimulate retail sales in and around Dallas, where all five of the New World group's retail outlets were located.

Shortly after the New World group began thus publicly vaunting their wares, World Carpets requested that they cease using this newly selected name. This request was prompted primarily by complaints from World Carpets' Texas retailers who believed that World Carpets had entered the retail market. World Carpets was concerned because it had previously found it economically advantageous to refrain from participating in any retail activity in order to retain the good will of its independent retail customers.

Despite World Carpets protestations, the New World group continued with their advertising campaign and erected billboards at their five business locations, whereupon WORLD commenced this action. In November, 1967, after a hearing on a temporary injunction, the trial court enjoined the use of the trade name NEW WORLD. New World complied and the case proceeded to trial be-

fore a jury. At the close of the evidence, World Carpets moved for a directed verdict. The motion was denied and the jury was instructed to decide whether likelihood of confusion between the trademarks had been shown. Unfortunately, during the jury's deliberations, a juror's inquiry to the judge made it evident that the juror had entered into his own independent investigation of the law of the case. A mistrial was declared. World Carpets moved for a summary judgment, however the trial judge ultimately reversed his prior ruling and directed a verdict in favor of World Carpets. An order was entered permanently enjoining the defendants from using the word WORLD on any symbol representing the world or a globe in connection with the sale of carpeting or floor covering. The issue of damages flowing from the infringement was severed and reserved for later decision. It is not before the court on the present appeal.

The New World group appeals from this injunction. Although twelve issues are assigned for review, in order for New World to prevail, several key points must first be favorably resolved. These key points are: (1) Whether the trademark WORLD as here applied is primarily geographically descriptive and hence unregisterable (2) whether the utilization of NEW WORLD (with a globe symbol) by a local carpet retailer is so dissimilar in meaning and so lacking in competitive features from the use of WORLD (with a globe symbol) by an interstate carpet wholesaler-manufacturer that confusion could not result; (3) whether the purely intrastate retail business of the New World group could create an actionable infringement of a federally registered trademark; and (4) whether the trial judge erred in directing a verdict in favor of World Carpets.

## II. IS *WORLD* REGISTERABLE?

Relying upon 15 U.S.C.A. § 1052(e) (2) (1963), the New World group contends that the manufacturer's trademark WORLD is a geographical term and therefore not registerable. The pertinent portions of Section 1052 provide:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it

\* \* \* \* \* \*

(e) Consists of a mark which, \* \* (2) when applied to the goods of the applicant is primarily geographically descriptive \* \* \*.

New World asserts that registration of WORLD is proscribed by the above Code section since WORLD is nothing more than a geographic term capable of exact definition. We disagree.

It is plain that the congressionally established prohibition against registration of geographical names or terms basically stems from the realization that most terms in the vocabulary of this science are generic or descriptive. Thus, Congress has expressly left accessible to all potential users those names of subdivisions of the earth—regions, nations, counties, towns, rivers, lakes, and other natural and artificial geographical units —which could be employed to draw public attention to the origin of a product or the situs of a business. It would obviously promote unfair competition to proscribe for all save a single producer the name of a region and thereby preclude other producers of the same product in the same region from indicating their product's origin.[1] The danger

1. In Delaware & Hudson Canal Co. v. Clark, 80 U.S. (Wall.) 311, 324, 20 L. Ed. 581 (1872), the Supreme Court made the following statement:

And it is obvious that the same reasons which forbid the exclusive of generic names or of those merely descriptive of the article manufactured and which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names, designating districts of

of mischievous monopolies is doubly acute since the place of a product's origin often has come to suggest particular qualities or attributes. One can easily see either the danger of permitting an Idaho potato grower to appropriate that State's name to his exclusive use, or the unfairness of allowing a French couturier to register the word French and preclude others from referring to this elegant origin of their clothing line.[2]

■■ At the same time the wording of the statute makes it plain that not all terms which are geographically suggestive are unregisterable. There are certain words, which while containing the germ of geographic significance, cannot be identified with any specific geographic unit or are not used in a descriptive sense and hence do not fall within the ambit of proscribed trademarks. Indeed, the statutory language declares nonregisterable only those words which are "primarily geographically descriptive." The word "primarily" should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is minor, obscure, remote, or unconnected with the goods.[3] Additionally, it has been noted that a mark is not primarily geographically descriptive if (1) it does not iden-

tify the place or the region from which the goods come, or (2) it does not suggest that the goods come from the place or region named by the mark.[4]

Examining past precedents, we see some noteworthy guide posts which have applied the above principles and have allowed the registration of geographical terms which are either too general in meaning or are not used in a descriptive fashion. The terms "Dixie"[5] and "Spice Islands"[6] have been allowed registration, notwithstanding their geographical implications since these two terms were not intended to signify the place of origin or distribution. The term "Allstate", while conceivably a geographical reference, lacks sufficient specificity to identify it with any particular geographical unit and therefore enrollment is allowed.[7] Such a word is of a similar cast to "National" and "International", which a leading text writer points out, are nationwide or worldwide in scope, and therefore are not really geographical terms at all.[8]

■ To this category of registerable words can be added WORLD—a term far too broad to suggest any identifiable unit or place of origin. Nor can it be said that the term is used in a descriptive fashion, for it neither relates to the place of origin of the goods so marked, nor is it descriptive of the bounds with-

country. Their nature is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they may be applied. They point only at the place of production, not to the producer, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies * * * Nothing is more common than that a manufacturer sends his products to market, designating them by the name of the place where they were made. But we think no case can be found in which other producers of similar products in the same place, have been restrained from the use of the same name in describing their goods.

2. In Re Deutz & Ostenberg, Inc., 54 App. D.C. 265, 296 F. 1012 (1924).

3. Ex Parte London Gramophone Corp., 98 U.S.P.Q. 362, 44 T.M.R. 96 (Com. of Pat. 1953).

4. Atlantic Monthly Co. v. Frederick Ungar Publishing Co., Inc., 197 F.Supp. 524, 529 (S.D.N.Y.1961); see also, Leeds. "Trademarks—The Rationale of Registerability", 26 Geo.Wash.L.Rev. 653, 666 (1958).

5. Century Distilling Co. v. Continental Distilling Corp., 23 F.Supp. 705 (E.D.Pa. 1938).

6. Spice Islands Co. v. Spice Land Products, Inc., 262 F.2d 356 (2d Cir. 1959).

7. Sears, Roebuck & Co. v. Allstate Motors, Inc., 110 U.S.P.Q. 485 (N.D.Ill.1956).

8. 3 R. Callaman, The Law of Unfair Competition, Trademarks and Monopolies 199 (1969).

in which the trademark owner functions. We are wholly in accord with the following reasoning expounded by the Court of Customs and Patent Appeals in holding GLOBE, a synonym of WORLD not to be a geographic term.

We are of the opinion that the word "Globe" is not merely a geographical name or term in the sense in which the phrase is used in the statute. A geographical name or term to our minds signifies a nation, state, county, city, municipality, river, lake, or the like. The reasons for denying a trademark monopoly upon such names or terms is obvious, but "Globe" has no such geographical significance; it identifies no particular geographical location, nor is its proper use as a trade-mark likely to interfere with or embarrass any public or private right.

The same reasoning leads to the conclusion that a figure of the globe representing the earth is not, in the sense of the statute, a representation of merely a geographical name or term; it is of the terrestrial body. "There are also celestial bodies, and bodies terrestrial. * * *" The Congress, in the trade-mark registration act, did not ban the celestial, nor the terrestrial, but stopped with geographical names and terms.[9]

Based upon logic and past precedents, we determine that WORLD was properly registerable as a trade-name.

## III. CONFUSION

Having disposed of the threshold question of registerability, we must examine the gravamen of any action for trade-mark infringement—confusion resulting from the use by the New World group of a trademark similar to that belonging exclusively to World Carpets. Our task also has an additional complication, since we must not only review the finding of confusion, but we must also examine the assertion of the New World group, that since it operates solely in intrastate commerce, no action for infringement of a federally registered trademark will lie.

Our decision is controlled by the pertinent parts of 15 U.S.C.A. § 1114 (1963), which provide:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant * * *.

■ We first direct our attention to New World's assertion that the use of the trademarks, WORLD and NEW WORLD, is not likely to cause confusion. This claim contains as a major premise the already rejected view that these terms are geographical, because the contention goes that since the marks refer to entirely different geographical units—the globe on the one hand and the western hemisphere on the other—they are so dissimilar that they can never be confused in the minds of the purchasing public. A second ground of the argument asserts that since the parties aim at capturing different markets, retail vis-a-vis wholesale, confusion could not exist since there was no competition even within the carpet industry.

9. Champion Spark Plug Co. v. Globe Union Mfg. Co., 88 F.2d 970, 972, 24 C.C.P.A. 1088 (1937).

Trademark jurisprudence, however, has long recognized that the lack of competitiveness is not always dispositive of the question of confusion and hence infringement. One such relationship where this is true exists when the sponsor or maker of one business or product might naturally be assumed to be the maker or sponsor of another business or product. The confusion evident in such cases is confusion of the business; the deceived customer buys the infringer's product in the belief that it originates with the trademark owner or that it in some way is affiliated with the owner. When this occurs, the infringer is unjustly trading on the true owner's established reputation. This is the precise wrong trademark legislation seeks to prevent.

If New World were permitted to continue to use the infringing mark, a choice on their part to market products of a lower grade or standard than the products marketed by New World could ultimately undermine the reputation of World Carpets.[10] Although this possibility is worrisome, World Carpets' primary concern centers on their competitive ability to obtain retailers, since the use of the mark by the New World group suggests the expansion of World Carpets into the retail market. Since the likelihood of a second user's practices adversely affecting the first user's reputation has been recognized as the basis for an actionable wrong, a fortiori an action will lie if the mere fact that a second user's presence as a retailer adversely affects the first user's competitive ability as a wholesaler.

## IV. USE IN COMMERCE

On the assumption that their business efforts were totally intrastate, New World next contends that the "in commerce" provision of Section 1114, supra, was not met. This position asserts that World Carpets would have a cause of action only if the New World group was engaged in interstate activities. Such an approach disregards the interpretation placed on the "in commerce" phrase by the Congress and the courts.

The intendment of the section giving a right for infringement "in commerce" is clear. The judicial interpretation given by this circuit is that "in commerce" is intended to refer to the impact that the infringement has upon the interstate use of the trademark and not to mean that an infringer is immune from interference with an interstate trademark so long as he keeps his infringement within the confines of a state.[11]

Moreover, Congress has aided our interpretation of "in commerce" by enacting Section 1127 of Title 15, which provides, "In the construction of this chapter, unless the contrary is plainly apparent from the context * * * the word 'commerce' means all commerce which may be lawfully regulated by Congress." There seems to be little doubt that Congress can at times regulate intrastate commerce. The reasoning of the Sixth Circuit is apropos:

Under the provisions of the Lanham Trade-Mark Act, however, it is not necessary that the infringing use itself be in interstate commerce. It is enough if the use has a substantial economic effect on interstate commerce. The Act provides that a mark shall be deemed to be used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C.A. § 1127. And, "the word 'commerce' means all commerce which may lawfully be regulated by Congress." 15 U.S.C.A. § 1127. Since as a matter of Constitutional law it is now beyond question that Congress may regulate intrastate ac-

10. See Wall v. Rolls-Royce of America, Inc., 4 F.2d 333 (3rd Cir. 1925), and W. E. Kautenberg Co. v. EKCO Products Co., 251 F.2d 628, 45 C.C.P.A. 761 (1958).

11. Trail Chevrolet, Inc. v. General Motors Corp., 381 F.2d 353 (5th Cir. 1967).

tivities which substantially affect interstate commerce, Mandeville Island Farms v. American Crystal Sugar Co., 1948, 334 U.S. 219, 232–237, 68 S.Ct. 996, 92 L.Ed. 1328, it is clear that intrastate infringing use is within the provisions of the Act if it has a substantial economic effect upon interstate use by the mark's owner. Iowa Farmers Union v. Farmers' Educational & Coop. Union, 8 Cir., 1957, 247 F.2d 809, 815–816; Pure Foods v. Minute Maid Corp., 5 Cir., 1954, 214 F.2d 792, 795–796, certiorari denied 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697; Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, 966–967; National Tuberculosis Ass'n v. Summit County Tuberculosis & Health Ass'n, D.C.N. D.O. 1954, 122 F.Supp. 654, 656–657; see also Commentary on the Lanham Trade-Mark Act, 15 U.S.C.A. pp. 268–269. Without question the plaintiff's complaint alleged an infringing use "in commerce" within the meaning of the statute. Facts showing the plaintiff's own use of its mark in interstate commerce were clearly set out, as were facts alleging a substantial economic effect upon that use resulting from the defendants' intrastate infringement.[12]

## V. THE DIRECTED VERDICT

Finally, we must examine the manner in which the requisite confusion was found to exist. The trial court, after dismissing the jury for misconduct, granted World Carpets' motion for directed verdict, which necessarily took from the jury province the determination of whether confusion was present.

An examination of the entire record, however, leaves us with the conclusion that, even when viewing the evidence in a light most favorable to the party opposing the motion for directed verdict, the minds of reasonable men could not have differed.

While this circuit regards the question of confusion as a fact determination,[13] it is not necessary to show actual confusion. One merely has to show that the likelihood of confusion exists.[14] There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.[15] Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.

Reviewing the evidence adduced at the trial, which included uncontradicted testimony that World Carpets had been called by retailers who thought World Carpets had entered the retail market, we do not find any evidence to refute the clear inference created by this proof of actual confusion. We therefore concur in the conclusion of the trial court that the evidence pointed so strongly in favor of a finding of confusion that the minds of reasonable men could not have arrived at a contrary decision. This being true, the direction of a verdict was proper.[16]

The order and judgment entered February 24, 1970 is affirmed and the cause is remanded for further proceedings on the reserved issue of damages.

Affirmed and remanded.

12. Lyon v. Quality Courts United, Inc., 249 F.2d 790 (6th Cir. 1957).

13. John R. Thompson Co. v. Holloway, 366 F.2d 108 (5th Cir. 1966).

14. Abramson v. Coro, Inc., 240 F.2d 854 (5th Cir. 1957).

15. Spangler Candy Co. v. Crystal Pure Candy Co., 353 F.2d 641 (7th Cir. 1966).

16. Boeing Company v. Shipman, 411 F.2d (5th Cir. 1969).