**JOHN DEERE AND COMPANY,**
Appellant,

v.

**PAYLESS CASHWAYS, INC.,** Appellee.

No. 81–1659.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1982.

Decided May 7, 1982.

As Modified on Denial of Rehearing
July 20, 1982.

Theodore R. Scott, McDougall, Hersh & Scott, Chicago, Ill., Daniel M. Dibble, Gary S. Dyer, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for John Deere & Co.; John M. Nolan, John Deere & Co., Moline, Ill., of counsel.

Carter H. Kokjer, Richard R. Johnson, Lowe, Kokjer, Kircher, Wharton & Bowman, Kansas City, Mo., for Payless Cashways, Inc.

Before HENLEY, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Deere Company (Deere) appeals from a judgment entered in the District Court[1] for the Western District of Missouri denying injunctive relief for alleged trademark infringement and unfair trade practices. Following a bench trial, the district court found that Payless Cashways, Inc.'s (Payless) use of the word FURROW as the name and service mark of its retail stores and on newspaper advertising supplements did not infringe upon Deere's use of the term THE FURROW as the name and trademark of its quarterly agricultural magazine because there was no likelihood of confusion among actual or prospective customers. For reversal Deere argues that it was entitled to injunctive relief as a matter of law under this court's ruling in *Hanson v. Triangle Publications*, 163 F.2d 74 (8th Cir. 1947),

---

1. The Honorable Russell G. Clark, Chief Judge, United States District Court for the Western District of Missouri.

cert. denied, 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424 (1948), or, alternatively, because Deere proved prior use and appropriation of THE FURROW as a trademark. For the reasons discussed below, we affirm the district court.

The underlying facts are not in dispute. Deere manufactures and sells farm machinery, industrial machinery, and various consumer products including such items as lawn mowers, outdoor grills, jackets and extension cords. In 1927 Deere obtained trademark regulation of THE FURROW as a trademark for an agricultural magazine that it has published and distributed since 1896. THE FURROW magazine typically contains 32 to 48 pages with half of the pages consisting of editorial material on agricultural topics and the other half consisting of advertisements of Deere products. Deere does not sell its magazine commercially but distributes it free of cost to customers and prospective customers as well as to various government offices and libraries. The name THE FURROW appears once in bold print on the magazine's cover and again on one inside page in a section devoted to identifying the magazine, its editors and publisher. The mark also appears on promotional items such as ballpoint pens and note pads which Deere distributes to its dealers. Deere's products are always advertised and sold under Deere's distinctive, individual trademark. The mark THE FURROW is not used in connection with any of Deere's products other than the magazine.

Payless operates retail building materials stores. The stores sell various items including fertilizers, lawn mowers, garden hoses, outdoor grills and fencing. The stores do not sell Deere's products. In February 1977, Payless adopted the name FURROW, which is the surname of Payless' founding family, as the name and service mark for several of its stores. Payless advertises products offered for sale at the FURROW stores by means of newspaper supplements that display the FURROW name within a curved red arrow design. Payless also dis-tributes caps, pens and note pads bearing the name FURROW for promotional purposes.

Payless has registered FURROW as a service mark for retail building materials store services and has filed two applications for registration of FURROW in connection with a red arrow design as a service mark for its stores. Deere has opposed both of those applications. Proceedings are currently pending in the federal Patent and Trademark Office.

Deere instituted the present action seeking a permanent injunction restraining Payless from using the word FURROW upon or in connection with its stores and advertising, and further seeking an order directing the Commissioner of Patents and Trademarks to cancel Payless' federal registration of FURROW and to sustain notices of opposition filed by Deere against Payless' pending application for registration of FURROW in connection with an arrow design.

At trial the district court identified three potential areas of confusion: confusion as to the origin of goods sold by either party; confusion as to the separate corporate identities of the parties; and confusion between THE FURROW magazine and Payless' advertising supplement. *Deere & Co. v. Payless Cashways, Inc.*, No. 79-0968-CV-W-3 (W.D.Mo. May 21, 1981). The district court held that Deere failed to carry its burden of showing a likelihood of confusion as to any of the identified areas based on the following findings, summarized here: (1) all products sold by either party bear distinctive, individual trademarks; (2) Deere's mark, THE FURROW, is used exclusively to identify the magazine and does not appear on any products advertised therein; (3) THE FURROW is an independent agricultural magazine and Deere has made no effort to associate that mark with any of its products; (4) the only similarity between the magazine and the newspaper supplements is the word FURROW and Payless' mark appears in a curved red arrow design.[2]

---

2. The district court noted that the word FUR-

ROW occasionally appears outside the red ar-

On appeal Deere first argues that it was entitled to injunctive relief, as a matter of law, because the case involves alleged magazine trademark infringement. In support Deere cites *Hanson v. Triangle Publications*, 163 F.2d 74, for the proposition that injunctive relief must be awarded to the owner of a magazine trademark to prevent the use of the mark on noncompetitive goods of a type advertised in the magazine. Deere appears to interpret *Hanson* as establishing a *per se* rule for cases of alleged magazine trademark infringement. We disagree with that interpretation and conclude that *Hanson* is distinguishable from the present case.

In *Hanson* the plaintiff was the publisher of *Seventeen Magazine* a magazine intended for teenage girls. As part of its marketing strategy, *Seventeen* developed a policy designed to promote the sale of products advertised in its magazine. The magazine sold "blow-ups" of its advertisements and style comments for use in store displays. It also sold "hang-tags" for garments featuring the words, "You saw it in Seventeen." The defendants were manufacturers of dresses for teenage girls. The dresses were marketed and advertised under the trade name "Seventeen for the Junior Teens." The defendants furnished garment "hang-tags" that were similar to those used by *Seventeen*. This court affirmed the district court's grant of injunctive relief noting that the district court's findings that the defendants had deliberately chosen the word "Seventeen" as part of their tradename to take advantage of *Seventeen* fame, that the defendants attempted to foster the impression that their dresses were connected with the magazine, and further that persons in the fashion and apparel business had been confused by the similarity of names, were supported by evidence. *Id.* at 76–77. This court also noted as significant the fact that the plaintiff in that case had made its magazine serve "as a commercial blesser and

oblique brander of merchandise for identifying the products of its advertisers in the market." *Id.* at 77.

■ In contrast, the district court in the present case found that Deere made no effort to associate its trademark THE FURROW or its magazine of that name with any of its products. It also found that Deere had not established a likelihood of confusion that consumers would think that Payless' products were associated with or endorsed by THE FURROW. Our review of the record convinces us that the above findings are supported by evidence and distinguish the present case from *Hanson*. *See Family Circle, Inc. v. Family Circle Associates*, 332 F.2d 534 (3d Cir. 1964) (no likelihood of confusion between magazine and defendant's discount stores bearing the same name).

Deere next argues that it was entitled to injunctive relief enjoining Payless from using the term FURROW upon newspaper advertising supplements, as a matter of law, under § 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), which provides in relevant part:

[a federal registration] shall be prima facie evidence of the registrant's right to use the registered mark in commerce on the goods . . . specified in the registration . . . but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

We conclude that Deere did establish a prima facie case but that it was successfully rebutted as delineated in the district court's findings.

■ Section 33(a) is a procedural device which creates the rebuttable presumption that trademark registrants have the exclusive right to use their mark in commerce in connection with the goods specified in the registration.[3] However, in order to obtain

row design in Payless' newspaper advertisements but found that such random occurrences were insufficient to prove a likelihood of confusion. We agree with that finding.

3. Payless raises the argument that Deere's prima facie rights in its mark are limited to "quarterly magazines" and cannot extend to other products such as newspaper advertising supplements. We need not reach this issue.

injunctive relief, trademark registrants must meet the same legal standard of infringement that is applied in common law trademark infringement. *See SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1090–91 (8th Cir. 1980); 2 J. McCarthy, Trademark and Unfair Competition § 23.1, at 34–35 (1973).

 "Trademark infringement occurs only when the use sought to be enjoined is likely to confuse purchasers with respect to such things as the product's source, its endorsement by the plaintiff, or its connection with the plaintiff. *Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368, 388 (5th Cir. 1977) (citations omitted). "In resolving the issue of infringement, that is, in determining if the prior user of mark is entitled to protection against a subsequent user, the test universally applied is whether there is a likelihood of confusion among the consumers." *Sweetarts v. Sunline Co.*, 380 F.2d 923, 926–27 (8th Cir. 1967), *aff'd in part, rev'd in part*, 436 F.2d 705 (8th Cir. 1971) (citations omitted). The resolution of this issue requires the court to consider numerous factors to determine whether, under all the circumstances, there is a likelihood of confusion. *See SquirtCo v. Seven-Up Co.*, 628 F.2d at 1091 (citations omitted). In addition, likelihood of confusion is a finding of fact and therefore the trial court's finding will be upheld unless it is clearly erroneous. *Id.* (citations omitted).

 In the present case the district court considered Deere's registration and use as well as the degree of similarity between the parties' marks, the relation in use and manner of marketing between goods marketed by each party, and the degree of care likely to be exercised by purchasers. The district court found that there was no likelihood that customers or potential customers of either party would confuse Deere's sophisticated, full color illustrated, agricultural magazine with Payless' relatively unsophisticated newspaper supplements advertising products sold at its retail building supply stores. We have carefully reviewed the record and conclude that the district court's finding is not clearly erroneous.

The judgment of the district court is affirmed.