PHIPPS BROS. INC., d/b/a Country
Corner Family Restaurant,
Plaintiff and Appellant,

v.

NELSON'S OIL AND GAS, INC., d/b/a
Nelson's Kountry Korner, Defendant
and Appellee.

No. 18008.

Supreme Court of South Dakota.

Argued March 16, 1993.

Decided Nov. 24, 1993.

Rehearing Denied Jan. 4, 1994.

Robert G. Mines, Hot Springs, and Jeremiah J. Davis of Dakota Plains Legal Services, Pierre, for plaintiff and appellant.

Donald A. Porter, Gene R. Bushnell of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for defendant and appellee.

WUEST, Justice.

Plaintiff appeals from a circuit court's determination that there was no trademark infringement by Nelson's Kountry Korner against Country Corner Family Restaurant. We reverse.

## FACTS

Arnold and Patricia Phipps (hereinafter Phipps) began operating the Country Corner Family Restaurant in Hot Springs, South Dakota in 1984. Prior to using the Country Corner name, Phipps obtained the permission of a Texas businessperson who ran several restaurants by the same name. The Country Corner Family Restaurant is well-known in the Hot Springs and southern Black Hills areas and has established good will and a positive reputation among residents in the area and enjoys substantial business from the tourist trade.

Defendant Nelson's Oil and Gas (hereinafter Nelson) operated three gas station/convenience stores, including restaurant service, under the name "Food n Fuel." These stores were in Edgemont, South Dakota, as well as the nearby towns of Lusk and Sundance, Wyoming. In 1990, Nelson was contacted by a Minnesota corporation with businesses using the same name and advised Nelson to cease using the name "Food n Fuel" due to a possible trademark infringement. Nelson held an employee contest to select a new name, and chose the name "Kountry Korner." Nelson was familiar with the Country Corner establishment in Hot Springs, and was questioned regarding the similarity of the two names prior to institution and promotion of the name change. Nevertheless, Nelson proceeded with plans to adopt the name "Nelson's Kountry Korner" for his businesses.[1]

The Country Corner Family Restaurant is a family-oriented establishment where patrons are seated at tables and served by waiters and waitresses. The Nelson Kountry Korner stores sell gasoline, petroleum products, toiletries and greeting cards and rent video cassettes. The South Dakota stores also sell liquor. Although Nelson urges that food service at the stores consists only of "fast food," the record reveals that the establishments are regularly promoted as restaurants serving breakfasts, pizza, chicken, ribs and other "'Homemade' Daily Specials." Advertisements inform readers that food can be carried out or that they may be "Seated in Air Conditioned Comfort."

Phipps filed suit against Nelson for trademark infringement requesting monetary damages and an injunction to prohibit Nelson from continuing to use the name Kountry Korner. The trial court found for Nelson. Phipps appeals raising three issues which we address while noting additional facts where necessary.

## ANALYSIS

It has been stated that in a trademark infringement case, "A 'trademark' is not that which is infringed. What is infringed is the right of the public to be free of confusion and the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir.1976). South Dakota has adopted what is virtually the universal standard governing trademark infringement—whether there is a likelihood of confusion among consumers. *Time Out, Inc. v. Karras*, 392 N.W.2d 434, 438 (S.D.1986); *see also* 15 U.S.C. § 1114;[2] *Sun Banks of Fla. v. Sun Fed. Sav. & Loan*, 651 F.2d 311, 315 (5th Cir.1981); *SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). "It is generally said that the relevant inquiry is whether an 'ordinarily prudent purchaser' would be likely to be misled or confused as to the source of the goods or services in question." *Health Indus. v. European Health Spas*, 489 F.Supp. 860, 866 (D.S.D. (1980))

1. In the fall of 1991, while the suit was pending, Nelson constructed an additional "Kountry Korner" at Custer, South Dakota.

2. Trademark infringement cases are frequently brought under the Lanham Act. Pertinent language of this federal law states that a person who "colorably imitate[s]" a registered mark" such that the use is "likely to cause confusion ... shall be liable in a civil action." 15 U.S.C. § 1114(1)(b). *See also* 15 U.S.C. § 1125(a)(1)(A). While the present case was not brought under the Lanham Act, the "likelihood of confusion" test appears to have been universally adopted in trademark infringement actions, even where brought under state law. This court has stated that "The purpose of recognizing the right to the use of a mark is to avoid a likelihood of confusion among the consumers." *Time Out*, 392 N.W.2d at 437 (citing *SweeTarts v. Sunline, Inc.*, 380 F.2d 923, 927 (8th Cir.1967) (stating that "the test universally applied is whether there is a likelihood of confusion among the consumers.")).

(citing *David Sherman Corp. v. Heublein, Inc.*, 340 F.2d 377 (8th Cir.1965)). "Actual confusion, while not required, is also strong evidence of the likelihood of confusion." *Health Indus.*, 489 F.Supp. at 866 (citations omitted).

■ This court has addressed the standard of review, stating that, "Whether there may be a likelihood of confusion among consumers is a factual question" to be resolved by considering various factors related to the case at hand. *Time Out*, 392 N.W.2d at 438. The weight of authority is that likelihood of confusion is a question of fact.[3] However, some courts hold that likelihood of confusion is a question of law. *See, e.g., Spheeris Sporting Goods v. Spheeris on Capitol*, 157 Wis.2d 298, 459 N.W.2d 581, 586 (Wis.App. 1990) ("Whether trade names are confusingly similar presents a question of law.") (citing *Gaston's White River Resort v. Rush*, 701 F.Supp. 1431, 1436 (W.D.Ark.1988)); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 (Fed.Cir.1987) ("The uniform precedent of this court is that the issue of likelihood of confusion is one of law." (citations omitted)); *and Volkswagenwerk Ag v. Hoffman*, 489 F.Supp. 678 (D.S.C.1980) (citing *Baker v. Simmons Co.*, 307 F.2d 458, 461 (1st Cir.1962).[4] A number of other courts have found likelihood of confusion to be a mixed question of law and fact. *See, e.g., Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991) ("Factual findings must be made with respect to the likelihood of confusion factors.... However, the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion.") (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988)); *see also Alpha Indus., Inc. v. Alpha Steel Tube & Shapes*, 616 F.2d 440, 443–44 (9th Cir.1980); *and Sears, Roebuck & Co. v. Johnson*, 219 F.2d 590, 591 (3rd Cir.1955). There is a split among the federal circuits as to the correct standard of review for the likelihood of confusion question for purposes of the Lanham Act; however, the U.S. Supreme Court refused to address the question. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Stuebenville, Inc.*, 670 F.2d 642 (6th Cir. 1982), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (White, J., dissenting; stating that "Because there is a split in the lower courts on this question ... I would grant certiorari to resolve the conflict." (citations omitted)). It has been suggested that were the Supreme Court to address the question, that Court would most likely categorize likelihood of confusion as a mixed law and fact question.[5]

3. *See* 74 Am.Jur.2d *Trademarks and Tradenames* § 119 (1974); *General Conf. Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 231 (9th Cir. 1989); *G. Heileman Brewing Co. v. Anheuser–Busch, Inc.*, 873 F.2d 985, 999 (7th Cir.1989); *Safeway Stores, Inc. v. Safeway Ins. Co.*, 657 F.Supp. 1307, 1313 (M.D.La.1985), *aff'd*, 791 F.2d 929 (5th Cir.1986) (citing *Falcon Rice Mill v. Community Rice Mill*, 725 F.2d 336, 344 (5th Cir.1982)); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 (11th Cir.1983); *Marcon, Ltd. v. Helena Rubenstein, Inc.*, 694 F.2d 953, 955 (4th Cir.1982); *Pioneer Hi–Bred Int'l, Inc. v. Wilson Hybrids, Inc.*, 733 F.2d 574 (8th Cir.1984) *aff'g*, 585 F.Supp. 1, 9 (S.D.Iowa 1982) (citing *Vitek Systems, Inc. v. Abbott Laboratories*, 675 F.2d 190 (8th Cir.1982); *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1090–91 (8th Cir.1980)); *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir.1983)).

4. Another court holding that likelihood of confusion was a question of law made note of "foundational facts" that must be considered:

In this circuit a determination of likelihood of confusion is "a conclusion of law premised on an analysis of a number of subsidiary factors, including the strength of the plaintiff's mark, the similarity of the marks, the similarity of plaintiff's and defendant's goods and the proximity of the marketing channels, evidence of actual confusion, defendant's intent in selecting the mark, the type of goods and the degree of care exercised by purchasers." [Citation omitted.] Where these factors (or "foundational facts" as they otherwise known) can be discerned from uncontested evidence presented through affidavits and exhibits, the court can determine likelihood of confusion as a matter of law without need for trial.

*Sykes Lab., Inc. v. Kalvin*, 610 F.Supp. 849 (D.C.Cal.1985) (citing *J.B. Williams Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 191 (9th Cir.1975)).

5. *See* Brett Thomas Reynolds, Comment, *Appellate Review of Lanham Act Violations: Is Likelihood of Confusion a Question of Law or Fact?* 38 Sw L.J. 743, 767 (1984). This writer analogizes the likelihood of confusion question to the Court's characterization of materiality of misrepresentation questions in securities decisions as

We are persuaded by analysis like that of the Ninth Circuit in *Alpha,* stating that "[i]n assessing whether there is likelihood of confusion, a court first considers numerous factors and then, based thereon, determines whether there exists a likelihood of confusion." *Alpha,* 616 F.2d at 443. Similarly, the Third Circuit stated in *Sears* that "the dispute here is not as to the basic facts, but as to what inference (i.e., ultimate fact) should reasonably be derived from the basic facts." *Sears,* 219 F.2d at 591. These analyses of the likelihood of confusion question are in accord with our own analysis of such questions. *See Permann v. Department of Labor,* 411 N.W.2d 113, 118 (S.D.1987). In *Permann,* we stated that " 'mixed questions of law and fact [are] questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *Id.* (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n. 19 (1982)).

Thus, we hold that the question of likelihood of confusion is a mixed question of fact and law. To the extent that this holding is inconsistent with *Time Out,* that opinion is modified.

"Since this issue is a mixed law-fact question and requires us to apply a legal standard, we will treat it as a question of law and freely review the issue." *Permann,* 411 N.W.2d at 119. *See In re Hendrickson's Health Care Serv.,* 462 N.W.2d 655, 656 (S.D. 1990) (stating that mixed law-fact questions requiring application of a legal standard are reviewed as are questions of law—*de novo* ) (citing *In re Groseth Int'l,* 442 N.W.2d 229, 232 (S.D.1989) (Sabers, J., concurring in part and concurring specially in part); *South Dakota Stockgrowers Ass'n v. Holloway,* 438 N.W.2d 561, 563 (S.D.1989)).

## I. DID PHIPPS PROVE A LIKELIHOOD OF CONFUSION TO THE CONSUMER BY THE USE OF THE NAMES COUNTRY CORNER FAMILY RESTAURANT AND NELSON'S KOUNTRY KORNER?

Proof of likelihood of confusion in trademark infringement cases does not require actual confusion; however, a mere possibility is not enough. There must be a "substantial likelihood that the public will be confused." *Vitek Sys., Inc. v. Abbott Lab.,* 675 F.2d 190, 192 (8th Cir.1982) (quoting *SquirtCo.,* 628 F.2d at 1091; *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 194 (1st Cir.1980)). The party claiming injury bears the burden of proving infringement. *Sun Banks,* 651 F.2d at 315; *see In re Estate of Armstrong,* 400 N.W.2d 267 (S.D.1987); *Pearson v. Pearson,* 312 N.W.2d 34 (S.D.1981).

The test of whether there is a substantial likelihood of confusion among consumers requires the court to consider numerous factors to determine whether, under all the circumstances, there is a likelihood of confusion. *SquirtCo.,* 628 F.2d at 1090–91 (citing *Grotrian v. Steinway & Sons,* 523 F.2d 1331 (2nd Cir.1975)). One commentator has noted:

> In cases involving a restaurant's name or mark, courts have identified several criteria to be considered in determining whether such a likelihood exists, including the strength of the allegedly infringed mark, the similarity of the parties' marks, the similarity of the parties' products or services, the similarity of their clientele or marketing efforts, the defendant's intent in adopting its name or mark, evidence of actual confusion between the parties' businesses, the presence of the parties in the same geographic market, the likelihood of expansion of the parties' product lines, and the degree of care consumers are likely to exercise in distinguishing between the parties' businesses [ ]. It appears that this list is not exhaustive, that not every factor appearing therein will invariably be relevant to every case, and that no single

mixed questions of law and fact. *Id.* (citing *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). *See also* Janet Shiffler Thomas, Comment, *Likelihood of Confusion Under the Lanham Act: A Question of Fact, A Question of Law, or Both?* 73 Ky.L.J. 235, 250–51 (1984–85) (discussing likelihood of confusion as a mixed question of law and fact).

factor or group of factors is invariably of overriding significance.

Tim A. Thomas, Annotation, *Restaurant Name or Mark as Infringement of Trademark Under § 32(1) or § 43(a) of Lanham Act (15 USCS §§ 1114(1), 1125(a))*, 95 A.L.R.FED. 31, 37 § 2 (1986).

■ The trial court found that Phipps had been using the name Country Corner Family Restaurant since 1984 and had acquired a valid common-law trademark under SDCL 37–6–27, and further found the trade names were similar in appearance, pronunciation and suggestion. The trial court then performed what appears to be a balancing test, weighing the similarities and the dissimilarities between the Country Corner and Kountry Korner business establishments. Conceding that Phipps did present evidence of customer confusion, the trial court held that there was "insufficient evidence to show likelihood of confusion" largely because, in the trial court's view, the similarities of the businesses were outweighed by the differences. This was an incorrect application of the likelihood of confusion test. Further, a review of the record indicates the trial court's findings are not supported by the evidence. The record reveals strong evidence of actual confusion:

1. Testimony indicated that when Nelson adopted the Kountry Korner name, many people were under the impression that Nelson had bought out the Phipps' restaurant. Questions were asked of Country Corner employees and management, as well as a neighboring businessman.

2. There was some confusion at an area radio station regarding whether Country Corner or Kountry Korner had previously participated in a special promotion.

3. Country Corner customers began incorrectly designating the payee on their personal checks as Kountry Korner. Other customers asked whether they should spell the name with a "C" or a "K", indicating that there was another Country Corner (or Kountry Korner) in Edgemont.

4. A carpet ordered by Nelson's Kountry Corner was shipped to Country Corner in Hot Springs.

5. A regular patron of the Country Corner ceased patronizing the restaurant when he saw a promotion for the Nelson Kountry Korner. This patron assumed that Country Corner had been purchased by Jack Nelson, an individual whose businesses he avoided patronizing.

6. A supplier asked Phipps to fill out a new credit application, under the mistaken belief that the Country Corner had been sold.

7. A driver for Food Services of America mistakenly drove up to the dock at Country Corner to make a delivery that was intended for the Kountry Korner.

"Plaintiff is required to show only that there is a 'likelihood of confusion,' as between the parties." *Country Properties, Inc. v. Bill's Country Kitchen*, 204 U.S.P.Q. 548, 1979 WL 25065 (M.D.Fla.1979) (citing *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 487 (5th Cir.1971).[6] In *Country Properties*, the court found facts showing actual confusion as to the respective parties on the part of customers, prospective employees, suppliers and delivery services. The court stated:

> There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while *very little proof of actual confusion would be necessary to prove the likelihood of confusion*, an almost overwhelming amount of proof would be necessary to refute such proof.

*Id.* (citing *World Carpets*, 438 F.2d at 489) (emphasis added). Phipps produced ample evidence of actual confusion to meet the burden of proof. We also note that the trial court appears to have placed importance on the fact that the business locations were more than twenty miles apart. We find no authority for designating an arbitrary radius of any distance that would excuse trademark infringement. Therefore, we hold that Phipps met the burden of proof for likelihood

---

6. In *Country Properties,* summary judgment on the issue of infringement was granted to Country

Kitchen restaurants against the defendant who had adopted the name "Bill's Country Kitchen."

of confusion, and reverse the trial court on this issue.

## II. WAS PHIPPS ENTITLED TO AN INJUNCTION PROHIBITING NELSON FROM USING THE NAME KOUNTRY KORNER?

■ "[I]n order to obtain injunctive relief, trademark registrants must meet the same legal standard of infringement that is applied in common law trademark infringement." *John Deere and Co. v. Payless Cashways, Inc.*, 681 F.2d 520, 523–24 (8th Cir.1982); *SquirtCo.*, 628 F.2d at 109–1091; *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 499 (5th Cir.1979). "A permanent injunction is the only way to prevent the likelihood that the public will be misled." *Health Indus.*, 489 F.Supp. at 869. We also note that in a trademark infringement case, "Actual damages need not be shown in order to obtain injunctive relief." *Howards Clothes, Inc. v. Howard Clothes Corp.*, 236 Minn. 291, 52 N.W.2d 753, 758 n. 8 (1952). Because we reverse on the issue of likelihood of confusion, we instruct the circuit court to enter an injunction consistent with this opinion.

## III. DID THE TRIAL COURT ERR IN QUASHING THE SUBPOENA DUCES TECUM WHICH SOUGHT PRODUCTION OF NELSON'S FINANCIAL RECORDS AND PROFITS, TO BE USED FOR CALCULATION OF CONSEQUENTIAL DAMAGES?

■ Prior to trial, Phipps brought a subpoena duces tecum requesting Nelson's previous four years' income tax returns. Our statute allows the court, upon motion, to "quash or modify the subpoena if it is unreasonable and oppressive." SDCL § 15–6–45(b)(1). Nelson so moved, and via a telephonic hearing, the court granted the motion to quash. The order granting the motion fails to state the court's rationale, and no transcript of the telephonic hearing is included in the record; therefore, we cannot review the basis of the ruling. We have held that a party seeking to modify or quash such a subpoena has the burden of proving the necessity of doing so. *State ex rel. Dep't of Transp. v. Grudnik*, 90 S.D. 571, 243 N.W.2d 796, 798 (1976). We generally recognize that the trial court should be allowed considerable

discretion on its evidentiary rulings. *See State v. Hanson*, 456 N.W.2d 135, 138 (S.D. 1990); *State v. Olesen*, 443 N.W.2d 8, 9 (S.D. 1989); *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986). However, in the present matter, if the issue of consequential damages issue is re-tried, the court is free to reconsider its ruling on the subpoena. *See* SDCL 37–6–24 (allowing damages in addition to injunction in trademark infringement action). Further, we note that the briefs of the parties addressed our statutes on punitive damages. In our opinion, this has no application to consequential damages incidental to the issuance of an injunction.

MILLER, C.J., and SABERS, J., concur.

HENDERSON, J., concurs in part and dissents in part.

AMUNDSON, J., dissents.

HENDERSON, Justice (concurring in part; dissenting in part).

After a two-day trial in April, 1992, the trial court factually found (Finding of Fact # 35) that "reasonably prudent customers would not confuse Plaintiff's business with Defendant's."

There exists, however, a "likelihood of confusion" between the Country Corner Family Restaurant in Hot Springs, and Nelson's Kountry Korner establishments in Edgemont, Custer and two nearby Wyoming communities.

In my opinion, the circuit court entered the above finding of fact, plus thirty-four more, contrary to the "likelihood of confusion" rule and, thus, was clearly erroneous. Conclusions of Law, based upon these erroneous findings, became mistakes of law. *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987). There is no doubt that there is *some* evidence to support the position of appellee, Nelson's Oil & Gas, Inc., d/b/a Nelson's Kountry Korner. But that is not the test. The test, taken from *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), which this Court adopted in *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970), is simply: Findings of

Fact are clearly erroneous if the reviewing court, based upon the *entire evidence*, is left with the definite and firm conviction that a mistake has been made. We held in *Time Out, Inc. v. Karras*, 392 N.W.2d 434, 438 (S.D.1986) that the phrase "likelihood of confusion" *is a factual question*. Such holding was precise, recent precedent in this Court.

Phipps Bros., Inc., d/b/a Country Corner Family Restaurant, was the first in time and in right. It was the first competing business to use the name and, thus, enjoys common law rights. *North Star State Bank v. North Star Bank Minnesota*, 361 N.W.2d 889 (Minn.App.1985). Phipps Bros., Inc., d/b/a Country Corner Family Restaurant, used the name Country Corner Family Restaurant for a considerable period of time before Nelson's Oil & Gas, Inc., d/b/a Nelson's Kountry Korner infringed by using a name—a name which was similar in appearance, similar in sound, similar in the meaning of the name and similar in the nature of the goods and services. This was a civil wrong. *Health Industries v. European Health Spas*, 489 F.Supp. 860, 866 (D.S.D.1980). In my opinion, Phipps Bros., Inc., established a common law trademark. Obviously, the names of these two restaurants are phonetically indistinguishable. Finding of Fact # 5 finds "Plaintiff (Phipps Bros.) registered the trademark 'Country Corner Family Restaurant' with the South Dakota Secretary of State on July 23, 1990."

A "trader" [or competitor or dealer], by first employing a trade name, is

> entitled to have the business which he has built up under such name protected against unfair competition on the part of subsequent rival traders, and equity may enjoin the use of such trade-names or similar names by subsequent rival traders where necessary to protect the business built up by the first dealer.

*Storm v. Canyon Amusement Corp.*, 76 S.D. 413, 79 N.W.2d 698, 700 (1956). Thus, injunctive relief will lie in the case at hand.

Regarding the extensive discourse on the scope of review which now disregards our 1986 holding in *Time Out, supra*, I respectfully dissent. In *Time Out*, this Court adopted the majority viewpoint in the United States ("the weight of authority" this opinion dubs it); now, approximately six and one-half years later, we cast aside our precedent. When does the Bar and Bench of this state set its feet on a legal premise we have heretofore enunciated?

Not only in *Time Out*, but also, in SDCL 15–6–52(a), we read

> *Findings of fact shall not be set aside unless clearly erroneous*, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. (Emphasis supplied mine).

Now, I close in this regard, citing to an old master, Henry Campbell Black. In The Law of Judicial Precedents 10–12 (1912), he sets forth five governing principles in the application of judicial precedents. Quoting him, I set forth the third principle:

> Third. *It is the duty of a court of last resort to abide by it by its own former decisions, and not to depart from or vary them unless entirely satisfied, in the first place that they were wrongly decided, and in the second place, that less mischief will result from their overthrow than from their perpetuation. This is the proper application of the maxim, "stare decisis."* (Emphasis supplied mine).

We have recent precedent before us, handed down by this Court, and we should not jettison our former decision. Again, I read in 2 Vill.L.Rev. 367–369 (1957), a writing of John Hanna, The Role of Precedent in Judicial Decision, that "stare decisis" is the abbreviated form of "stare decisis et non quieta movere," which is translated to mean "to stand by decisions and not to disturb what is settled." Hanna quotes Blackstone thereat:

> The doctrine of the law then is this: that precedents and rules be followed, *unless flatly absurd or unjust;* for though their reason be not obvious at first view, yet we owe such a deference to former times as to not suppose that they acted wholly without consideration. (Emphasis supplied mine).

South Dakota's lawyers are entitled to a continuity of the law, rooted in a belief of reliance on how this Court has ruled in the past. Based on such a reliance, they have a reasonable expectation of future decisions.

This, in turn, equates into advice unto the public. I would stay the course on *Time Out* and the majority viewpoint in the United States.

AMUNDSON, Justice (dissenting).

The Phipps operate a traditional family style restaurant in Hot Springs, South Dakota, under the name of Country Corner Family Restaurant. In the operation, customers are seated at tables and served by a waiter or waitress. There are table clothes, napkins and silverware at each table. Service is offered for breakfast, lunch and dinner.

Nelsons operate gas stations and convenience stores in Edgemont and Custer, South Dakota, as well as locations in Wyoming. At these facilities, Nelsons sell gas, diesel, cards, welding supplies, liquor, beer, wine, groceries, automotive supplies, movie rentals, souvenir items, night crawlers and fast food. There is limited seating at their Edgemont fast food operation where they cater to the railroad employees of Burlington Northern. These outlets are operated under the name of Nelson's Kountry Korner, and are open twenty-four hours a day.

There was a scant amount of evidence produced by Phipps regarding the issue of confusion. One example dealt with customers who issued checks for their food by writing in "Kountry Korner" rather than "Country Corner." But does this really show confusion on the part of these individuals? These customers obviously wanted to dine at a traditional family restaurant and they did by choosing Phipps' restaurant. Also, the record showed some inadvertence on the part of delivery persons. In this day and age, I would dare say that most individuals and businesses encounter a receipt or delivery of something that was not ordered. In fact, one invoice in this case clearly had the Nelson name on it, but the delivery person seemed to disregard that fact. These minimal instances of alleged confusion certainly did not disclose a confusion of the ordinary provident purchaser of a family style dinner. It is obvious that these two businesses, due to the nature of their distinct operation, attempt to garner entirely different parts of the food dollar market. *Wuv's International, Inc. v.*

*Love's Enterprises, Inc.,* 208 U.S.P.Q. 736 1980 WL 30296 (D.Colo.1980).

Another factor to be considered in an infringement case is the intent of Nelsons to trade upon the Phipps' reputation or good will. *Comidas Exquisitos, Inc. v. O'Malley & McGee's, Inc.,* 775 F.2d 260 (8th Cir.1985). There is no evidence in this record that Nelsons had the requisite intent in this case to profit from the Phipps' name.

The trial court was in the best position to hear the testimony regarding the issue of confusion and it found against the Phipps. I would not hold that the trial court erred in ruling on this evidence and must respectfully dissent.