**VOLKSWAGENWERK AG, Plaintiff,**

v.

**Richard F. HOFFMAN d/b/a The Bug House, Defendant.**

**Civ. A. No. 78-1891.**

United States District Court,
D. South Carolina,
Columbia Division.

April 23, 1980.

James S. Chandler, Jr., Michael W. Tighe, Columbia, S. C., Floyd A. Gibson, Ronald T. Lindsay, Charlotte, N. C., for plaintiff.

Victoria L. Eslinger, Columbia, S. C., for defendant.

CHAPMAN, District Judge.

This matter is before the Court on motion of the plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is made upon the ground that there is no genuine issue of any material fact, and that the plaintiff is entitled to judgment as a matter of law.

Plaintiff Volkswagenwerk AG ("VWAG"), the German manufacturer of Volkswagen automobiles, filed this action for trademark infringement and unfair competition against Richard F. Hoffman, owner and operator of a repair service facility known as The Bug House. The complaint alleges that defendant's use of the word "Bug" in its trade name and on signs and in advertising invades plaintiff's right to the exclusive use of its common law trademark and registered service mark "Bug" and constitutes unfair competition. Plaintiff seeks equitable relief to permanently enjoin defendant's use of any reproduction or colorable imitation of the word "Volkswagen", including the following terms: "Bug House", "Volks", "Folks", "Wagen", "Vagen", "VW", "Beetle", as well as defendant's use of a silhouette of the distinctive VW Beetle in his service warrant.

Rule 56 provides that judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court has reviewed these documents and finds the following facts to be undisputed.

Since the early 1950's plaintiff has caused to be imported into the United States the type I sedan, a small distinctive two-door vehicle. This vehicle was VWAG's largest selling and most prominent model (affidavit of John Slaven, Par. 4). Beginning sometime before 1961, the cars came to be known as the "Bug". Thereafter, Volkswagen of America, Inc. ("VWoA"), the United States importer of Volkswagen products, adopted and began using the word "Bug" as the designate for this vehicle (Slaven affidavit, Par. 4). The term "Bug" has been used continuously by VWoA in its advertising and sales promotion materials

(Slaven affidavit, Par. 4–7 and exhibits 1–17 thereto), and by members of the public throughout the United States (Slaven affidavit, Par. 4). The United States Patent Office, in 1978, granted plaintiff's application for registration of the word "Bug" as a service mark (Riechel affidavit, Par. 8 and exhibit thereto). Since 1949, more than seven million Volkswagen automobiles, having an aggregate retail value of more than one billion dollars, have been sold and subsequently serviced and repaired in the United States under Volkswagen's trademarks and service marks, including the mark "Bug" (Riechel affidavit, Par. 11). VWAG has invested huge sums of money to advertise the products and services sold under its trade and service marks, expending more than thirty-three million dollars in the United States in 1978 alone (Slaven affidavit, Par. 9 and exhibit 19 thereto).

Volkswagen products are imported into this country through VWAG's wholly owned subsidiary, Volkswagen of America ("VWoA"). VWoA has contracted with independent companies to distribute Volkswagen products in certain areas of the country. In addition, VWoA engages in the distribution of Volkswagen products in areas of the country not served by independent distributors. There are more than 1,000 independently owned retail dealerships, including approximately fourteen in the state of South Carolina, authorized to sell and service Volkswagen products (Riechel affidavit, Par. 3 and 4). These dealerships are not only authorized, but are required, to use VWAG's trademarks and service marks in connection with their businesses. (Reichel affidavit, Par. 5). Plaintiff exercises great care in the selection of its distributors and dealers and engages in considerable effort to control the nature and quality of the goods and services offered by them. This includes constant training of the dealer service departments and presentation of courses to update the service personnel and new developments. (Reichel affidavit, Par. 9). Plaintiff, moreover, has actively challenged infringements of its marks by independent repair shops.

In January, 1970, defendant Hoffman began an automobile repair business in Columbia, South Carolina, under the trade name "The Bug House." Defendant is in no way connected with the Volkswagen organization. At the time he adopted the trade name "The Bug House," defendant admits that he knew that Volkswagen was the manufacturer of the small sedan. He further admits that he knew some members of the public associated the term "Bug" with that particular Volkswagen sedan. He acknowledges that the catchy name was adopted to indicate that he worked on small foreign cars, and he admits that 95% of these small foreign cars are Volkswagens.

Defendant has used the trade name "The Bug House" in advertising, on a sign on his premises, and in the telephone directory. Additionally, defendant has used the term "Volkswagen" in his yellow pages advertisements, and on stationery and business cards.

■ The basic issue in a trademark infringement and unfair competition case is whether there is a likelihood of confusion in the minds of the public, and it is a question of law for the Court.

In an action for infringement of a protected trademark or name the test is that of confusing similarity. Thus, under the Lanham Act it is incumbent upon a court to determine whether a defendant's use of the contested mark is "likely to cause confusion or mistake or to deceive purchasers as to the source or origin of (the plaintiff's goods or services)." *Baker v. Simmons Co.*, 307 F.2d 458, 461 (1st Cir. 1962).

This principle has been followed in previous actions brought by VWAG against infringement of its marks by independent repair shops such as the defendant. *See, e. g., Volkswagenwerk AG v. Tatum*, 344 F.Supp. 235 (S.D.Fla.1972) (defendant's trade name "Volkswagen Service Center" held to infringe the trademark "Volkswagen" and constitutes unfair competition as a matter of law); *Volkswagenwerk AG v. Kardizian, d/b/a Volkswagen Village*, 170 U.S.P.Q. (BNA) 565 (C.D.Cal.1971) (defendant's trade

name "Volkswagen Village" held to infringe the trademark "Volkswagen" and constitute unfair competition as a matter of law).

■ Under the Lanham Act, VWAG has the exclusive right to use the registered service mark "Bug" for automobile services. 15 U.S.C. §§ 1053, 1115 (1976). Thus, any use of VWAG's registered service mark or any colorable imitation thereof, to describe defendant, his services or his business is a per se infringement of VWAG's rights.

■ The protection VWAG seeks is typical of that sought throughout American industry. Manufacturer's trademarks frequently are employed as adjectives in front of the words "service", "repair", or "specialist" to identify authorized service facilities. Courts have consistently held that protection is appropriate against use of such phraseology by unauthorized service establishments. *See, e. g., Yale & Towne Manufacturing Co. v. Haber*, 7 F.Supp. 791 (E.D.N.Y.1934); *Hoover Company v. Groger*, 12 Cal.App.2d 417, 55 P.2d 529 (1936).

■ Because defendant began using the title "Bug House" in 1970, and plaintiffs did not register the word "Bug" until 1978, defendant claims an issue of fact is raised as to whether plaintiff had acquired common law rights to the use of the word "Bug" via the "secondary meaning" doctrine. The secondary meaning doctrine holds that

> [W]ords which have a primary meaning of their own, such as bug may by long use in connection with a particular product, come to be known by the public as specifically designating that product. *Volkswagenwerk AG v. Rickard*, 492 F.2d 474 (5th Cir. 1974). (citations omitted)

Common-law rights in a mark generally are acquired by establishing secondary meaning in that mark. Secondary meaning attaches to a trade name, trademark or service mark when in the mind of the public it identifies the *source* of the goods or services rather than the goods or services themselves, or the quality, class or grade. Thus, secondary meaning can be developed as a result of acts taken by the owner of the mark as, for example, extensive advertising of its product with the mark. *Time, Inc. v. Life Television Corp.*, 123 F.Supp. 470, 474 (D.Minn.1954). A word can also develop secondary meaning by public usage of the word to designate a particular product. Thus, a nickname for a product is protectable as a trademark if the owner of the product adopts it or allows the public to use it without protest. *Coca Cola Co. v. Koke Co. of America*, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920); *Howard Johnson Co. v. Ho-Jo Campsites, Inc.*, 273 F.Supp. 447 (M.D.Fla.1967).

■ The massive use of "Bug" by the Volkswagen organization, including use in the Columbia area, prior to defendant's opening of its business in 1970, establishes VWAG's priority to the term "Bug." Defendant admitted in answers to interrogatories that he associated the word "Bug" with plaintiff's product. In 1976 the Patent and Trademark Office Trial and Appeal Board found that:

> As a result of petitioner's (Volkswagenwerk) long and extensive use in its advertising material and many years use in a similar manner in the trade and by the news media, petitioner has acquired a proprietary right and hence a protectable right in "BUG" as an associative term for its vehicles. . . . *Volkswagenwerk v. Advanced Welding and Manufacturing Corporation*, 193 U.S.P.Q. (BNA) 560, 675 (1976).

Thus, the word "Bug" has come to be associated with VWAG, its products, the members of its distribution network, and the services offered and sold by and through its distribution network. The relationship between the word "Bug" and VWAG has become so clear and incontestable that in the words of a California court which took judicial notice of the association:

> At this point in history [1969] there can be *no question but what the term "Bug"* had become almost synomomous with the Volkswagen vehicle. *Tomlin v. Walt Disney Productions*, 18 Cal.3d 226, at 229, 96 Cal.Rptr. 118, at 119 (1971).

In fact, at the hearing on this motion, defendant did not contest that in 64 cases brought by Volkswagen against different persons in different parts of the country using "Bug" or "Beetle" or similar identifications, Volkswagenwerk had always been successful in obtaining injunctive relief.

A district court in Massachusetts recently granted plaintiff Volkswagenwerk's motion for summary judgment in a case involving virtually identical facts. In *Volkswagenwerk AG v. The Bug Hospital, Inc., The Bug House, et al.* (C.A. No. 75–4501–Z) (D.Mass.1979), the defendant began using the names "The Bug Hospital" and "The Bug House" in 1967. Based on the plaintiff's affidavits in that case the Court found that plaintiff Volkswagenwerk began using the word "Bug" long before the defendants did. Similarly, here the defendant has offered no counter affidavits to dispute this fact.

■ Defendants argue that a question of fact is raised even assuming that the word "Bug" had acquired a secondary meaning in the Columbia area prior to 1970. Defendant asserts that there is a genuine issue of fact as to whether defendant's usage of the name "Bug House" or of a caricature of a sedan is sufficiently similar to constitute trademark infringement or unfair competition. As Judge Hemphill noted in *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302, 1306 (D.S.C.1969), the pivotal question in these cases is "whether there is a likelihood of 'confusion, mistake or deception' caused by the unauthorized use of one's trademark or a colorable imitation thereof." Furthermore, a judge is free to draw upon his own experience and observation to make an informed judgment as to the likelihood of confusion apt to be spawned by strongly analogous symbols. *Baker v. Simmons Co.*, 307 F.2d 458, 464 (1st Cir. 1962).

In finding, as a matter of law, that the defendant's acts created a likelihood of confusion and therefore infringed plaintiff's mark, the First Circuit advanced the following factors as determinative:

In short, phrases which we have under consideration are inter-related. In cases such as this then, both the similarities of the goods and of the marks used upon them must be considered together in order to arrive at an answer to the ultimate question of the likelihood of consumer confusion as to source. *Dwinell Wright Co. v. Nat'l Fruit Product Co.*, 140 F.2d 618, 623 (1st Cir. 1944).

Applying the foregoing criteria, it is clear that defendant's use of plaintiff's marks create "a likelihood of confusion" as a matter of law. Here, the mark which is the subject of plaintiff's objection is not only similar, but is identical to that belonging to plaintiff. Second, the products and services offered under this mark by defendant are similar to those offered by plaintiff through its licensees.

Finally, this Court is mindful of the two-fold purpose of the Lanham Act:

One is to protect the public so it may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, with the owner of a trademark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation. S.Rep.No. 1333, 79th Cong. 2nd Sess. 3 (1946), U.S.Code Cong. Serv. 1946, p. 1274.

Both VWAG and the public are entitled to protection against continued use by the defendant of the name "The Bug House". Summary judgment is, therefore, granted in plaintiff's favor, and defendant is enjoined from further use of the trade name "The Bug House" and from any other trademark or service mark use of VWAG's marks.

IT IS, THEREFORE, ORDERED AND DECREED as follows: that defendant and all persons acting in concert with defendant including defendants' agents, servants, employees, successors and assigns, be and are hereby, permanently enjoined from:

(1) Using in connection with its business or in the fashion of a trade name the words "The Bug House";

(2) Using in connection with its business or in the fashion of a trade name any reproduction or colorable imitation of the word "Volkswagen" including but not limited to "Volks", "Wagen" and "Vagen", "VW", "Beetle" or any other trademark or service mark belonging to plaintiff;

(3) Continuing the use of the pictorial representation of the Volkswagen Beetle,

(4) Using in connection with its business or in the fashion of a trade name any reproduction or colorable imitation of the word "Volkswagen", the letters "VW", "V" encircled, "VW" emblem, the word "Beetle" or the word "Bug" except that the word "Volkswagen", "Beetle", and "Bug" may be used as an adjective to describe the availability of parts or repair services for Volkswagen vehicles, provided that language precedes and follows such word in characters equal and identical in size, type, color, illumination, mounting, spacing, decoration, material and format; and that the phrases "Volkswagen service", "VW service" "Volkswagen repair", "VW repair", "Volkswagen sales", "VW sales", "Volkswagen parts", "VW parts", "Volkswagen specialists", "VW specialists", "Bug service", "Bug sales", "Bug repair", "Bug parts", "Bug specialists", "Beetle service", "Beetle sales," "Beetle repair", "Beetle parts" and "Beetle specialists" not be employed whether or not preceded or followed by any qualifying language;

(5) Using in connection with its business any pictorial reproduction, caricature, silhouette or colorable imitation of a Volkswagen vehicle that is likely to lead the public to believe that the defendant is in any manner, directly or indirectly, associated or connected with, or licensed, authorized, franchised, or approved by plaintiff or by someone connected with plaintiff;

(6) Making in any manner whatsoever any statement or representation or performing any act likely to lead the public or individual members of the public to believe that defendant is in any manner, directly or indirectly, associated or connected with, or licensed, authorized, franchised, or approved by plaintiff or by someone connected with plaintiff;

(7) Committing any other act which infringes plaintiff's trade name, trademarks or service marks.

Finally, defendants are hereby required to file with this Court and to serve on plaintiff's counsel within 60 days after service of this final judgment, a report in writing and under oath, setting forth in detail the manner and form in which defendants have complied with such injunction.

AND IT IS SO ORDERED.