**DOLLAR RENT A CAR SYSTEMS, INC., a California Corporation, Plaintiff,**

v.

**SAND DOLLAR CAR RENTALS, INC., a South Carolina Corporation and Michael McIntosh, Defendants.**

**Civ. A. No. 3:87–2625–0.**

United States District Court, D. South Carolina, Columbia Division.

May 30, 1990.

strain Defendants Sand Dollar Car Rental, Inc., (hereafter referred to as Sand Dollar) and Michael McIntosh from alleged infringement of its registered service mark under 15 U.S.C. § 1114(1). Second, Dollar seeks to restrain Defendants from unfairly competing in the rental car business. Third, Dollar seeks to restrain Defendants from common law trademark unfair competition.

Defendants contend that they have not infringed upon Dollars' registered mark by using the tradename of Sand Dollar. Defendants assert that "sand dollar" refers to a sea urchin and that the use of the term is not an attempt to profit from Plaintiff's service mark "DOLLAR." Further, Defendants assert that use of the tradename Sand Dollar is not likely to cause any confusion among those consumers who rent automobiles.

The matter was tried before the Court without a jury. Upon consideration of all the evidence presented by the parties, the Court finds that Sand Dollar and McIntosh have infringed upon Dollar's registered service mark in such a manner that the similarity in the two marks is likely to cause confusion to consumers. Therefore, the Court finds that Dollar is entitled to appropriate injunctive relief.

Clinch H. Belser, Jr., Belser, Baker, Barwick, Ravenel, Toal & Bender, Columbia, S.C., Ralph W. Kalish, Ralph W. Kalish, Jr., Peter S. Gilster, St. Louis, Mo., Theodore F. Schwartz, Clayton, Mo., for plaintiff.

William E. Bird, Columbia, S.C., for defendants.

## ORDER

PERRY, District Judge.

This is a civil action based upon trademark infringement arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and specifically under 15 U.S.C. § 1125(a), and unfair competition. Plaintiff Dollar Rent A Car Systems, Inc., (hereafter referred to as Dollar) asserts three causes of action for injunctive relief. First, Dollar seeks to re-

## FINDINGS OF FACT

1. Dollar is a California corporation. Since 1973, Dollar has registered five service marks with the United States Patent and Trademark Office. Each of these marks contain the word "DOLLAR" printed in capital letters. Except for the mark registered on December 23, 1980, each of the registrations disclaim the terms "RENT A CAR" or "RENT-A-CAR-SYSTEMS." Pltf.Exb. 1–5. The term "DOLLAR" is the dominant part of the service mark. The first four registered service marks are incontestable within the meaning of 15 U.S.C. § 1065.

2. Dollar operates a car rental business by means of franchise agreements. Dollar presently has several hundred offices throughout the United States and in other

countries. Dollar's business offices are located in airports or in urban non-airport settings throughout the United States and in several foreign countries. Since the initiation of this action Dollar's rental car office located at 600 Assembly Street, Columbia, South Carolina has ceased doing business. At the time of trial, Dollar anticipated opening another location in Columbia in the next few weeks.

3. Dollar seeks the business of commercial, military, and leisure travellers. Additionally, it rents cars as replacements while damaged vehicles are being repaired. Most of Dollar's customers pay for car rentals by credit card. Dollar does extensive advertising in in-flight magazines of all major air carriers; it participates in airlines' frequent flyer programs; Dollar advertises in nationwide and other newspapers such as *The State;* it advertises in the Yellow Pages, on the radio, and on national television networks. Dollar has a 10 million dollar advertising budget for 1990.

4. In June 1984 Dollar sent "slick ads" which emphasize the word "DOLLAR" to its franchisees. One such ad states "Your dollar goes further with Dollar."

5. The public perceives Dollar as offering a wide range of rental vehicles with various terms and rates. It also perceives that Dollar is concerned with economy and value.

6. Sand Dollar is a South Carolina corporation which was organized in 1985 and began operating in Columbia, South Carolina in 1986. Deft.Exb. 17. McIntosh is the president of Sand Dollar. Presently, Sand Dollar has one business which is located at 2941 Two Notch Road, Columbia, South Carolina.

7. Before selecting the name of his business McIntosh inquired with the South Carolina Secretary of State to determine if it could operate under the name of Sand Dollar Car Rentals, Inc. McIntosh registered its service mark of "Sand Dollar Car Rentals" and the accompanying logo of a sand dollar with the South Carolina Secretary of State. Deft.Exbs. 18 and 19. McIntosh did not inquire with the United States Patent and Trademark Office to determine if use of the name Sand Dollar Car Rentals, Inc. would violate a trademark.

8. McIntosh was aware of Dollar's business in Columbia prior to opening Sand Dollar in Columbia.

9. Sand Dollar rents older cars. Most of Sand Dollar's customers are local people or members of the military. Sand Dollar does not rent automobiles at the Columbia airport but it will provide taxi service and one-way taxi fare either from the airport to its business on Two Notch Road or from its business to the airport. Most of Sand Dollar's customers pay for car rentals with cash. Sand Dollar has rented vehicles to persons possessing out-of-state driver's licenses and out-of-state bank credit cards.

10. Sand Dollar advertises in the Columbia and Orangeburg, South Carolina Yellow Pages. When it was located in Surfside Beach, Sand Dollar placed an ad in the Myrtle Beach, South Carolina Yellow Pages which used the slogan "Your dollar goes farther with Sand Dollar." Pltf.Exb. 52. It has advertised on cable television and on the radio. Sand Dollar attempted to generate business in the Northeastern United States by use of a toll free telephone number. Occasionally Sand Dollar advertises in *The State,* the Myrtle Beach *Sun,* and neighborhood newspapers. Sand Dollar advertises its services by placing license plates with its name on the front of its rental cars. Deft.Exb. 9. Sand Dollar has given away t-shirts and baseball caps with its logo. Deft.Exb. 12 and 21. Sand Dollar has advertised at baseball games.

11. A former Sand Dollar employee, Jeff McCormick, testified that the word "dollar" means Dollar Rent–A–Car System in the car rental business.

12. Sand Dollar stipulated that witness David B. Allen was qualified as an expert in the fields of trademarks, patents, and tradenames. The expert witness testified that each of Dollar's five registered marks is incontestable. He testified further that, in his opinion, Dollar's service mark is a strong, famous mark and that the addition of the prefix "sand" to "dollar" did not alter the recognition of the term "dollar." The expert testified that in his opinion, Dollar and Sand Dollar provide essentially

the same services to identical consumers. Finally, the expert concluded that based upon his review of the pleadings, exhibits, depositions, and testimony at trial, Dollar's and Sand Dollar's service marks present confusingly similar commercial impressions.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter of this civil action and venue is properly laid in this Court pursuant to 28 U.S.C. § 1338, 15 U.S.C. § 1121, and 28 U.S.C. § 1391(c).

■ 2. The law of trademark infringement is a part of the broader law of unfair competition. Accordingly, the finding of a trademark infringement necessitates the finding of unfair competition. *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302 (D.C.S.C.1969).

3. Should it find Sand Dollar's mark infringing, the Court has jurisdiction to enjoin Sand Dollar from further trademark violations. 15 U.S.C. § 1116(a).

■ 4. The pivotal question in an alleged trademark infringement is whether "[a]ny person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device ... which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...". 15 U.S.C. § 1125(a)(1). In applying this test, the owner of the registered mark need not establish actual confusion; he need only show the likelihood of confusion. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir.1984).

5. Courts consider the following factors to determine whether there is a likelihood of confusion among service marks:

    a.  the strength or distinctiveness of the mark;

    b.  the similarity of the two marks;

    c.  the similarity of the goods/services the marks identify;

    d.  the similarity of the facilities the two parties use in their business;

    e.  the similarity of the advertising used by the parties;

    f.  the defendant's intent; and

    g.  actual confusion. *Id.*

The emphasis and relevance of each of these factors varies in each case. *Id.*

■ 6. Infringement does not require the identical copying of a mark. Instead, a service mark may be infringed if the dominant or salient characteristic of the mark is copied and is likely to cause confusion. *Edco, Inc. v. McElrath, et al.*, 172 U.S.P.Q. 149 (D.S.C.1971).

7. The Court finds that the strength of Dollar's mark, the similarity between Dollar's and Sand Dollar's marks, the services the marks identify, and the advertising used by the parties are the relevant factors for consideration in this case. The Court will address each of these factors separately.

8. *Strength/Distinctiveness of the Mark.* The Court recognizes that the first four registrations of Dollar's service mark are incontestable. 15 U.S.C. § 1065. Each of these marks emphasize the word "DOLLAR." Three of the incontestable marks disclaim the words "RENT A CAR" or "RENT–A–CAR SYSTEMS." The fact that Dollar's fifth registered mark, DOLLAR Rent–A–Car Systems, is not incontestable does not mean that the mark "DOLLAR" should not be protected.

■ 9. The registration of a mark creates a strong presumption that the mark is strong. *Polo Fashions, Inc. v. Gordon Group*, 627 F.Supp. 878 (M.D.N.C.1985). The incontestability of a mark can be considered in determining the strength of a mark. *Dieter v. B & H Industries of Southwest Florida*, 880 F.2d 322 (11th Cir. 1989).

10. The strength of a mark is also determined by whether the mark is, in ascending order of strength, generic, descriptive, suggestive, or arbitrary. *Pizzeria Uno, supra.* A descriptive mark is one which "identifies a characteristic or quality of an article or service" while a suggestive mark is one that "suggests rather than describes, 'some characteristic of the goods

to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of [the] goods'." *Id.* at 1528.

11. A descriptive mark is considered weak and is not accorded trademark protection unless it has a secondary meaning. A mark acquires a secondary meaning when a word with a primary meaning of its own develops an association or connection with a particular product through lengthy use and advertising. *Volkswagenwerk AG v. Hoffman,* 489 F.Supp. 678, 209 U.S.P.Q. 398 (D.S.C.1980) (The word "bug" has by long use and extensive advertising become associated with a Volkswagen automobile and has thus acquired a secondary meaning). Descriptive marks which have acquired a secondary meaning and suggestive marks are afforded trademark protection. *Pizzeria Uno, supra.*[1] See also, *Clinton Detergent Co. v. Procter & Gamble Co.,* 302 F.2d 745, 49 C.C.P.A. 1146 (1962) (Although "JOY" dishwashing detergent was at first a weak mark, it had acquired an extensive secondary meaning and was, therefore, likely to be confused with "CARJOY").

12. Where a mark consists of more than one word, the word which is not disclaimed is the dominant term in determining distinctiveness or suggestiveness. *Pizzeria Uno, supra.* The dominant part of a mark may be given "extra weight on the issue of likelihood of confusion." *Id.* at 1530. Where the dominant word is suggestive and is identical except for a different prefix in the challenged mark, there is sufficient similarity to create a likelihood of confusion if the products involved belong to the same general service. *Id.*

13. The Court finds that Dollar's mark is a strong mark and, therefore, there is a likelihood of confusion between Dollar's and Sand Dollar's marks. Dollar has five service marks which utilize the mark "DOLLAR" registered with the United States Office of Patent and Trademark. Four of these registrations are incontestable.

14. "DOLLAR," the dominant mark, is suggestive in that it implies that it is economical to rent vehicles from Dollar. See, *Dollar Rent A Car Systems, Inc. v. Three Dollar Rent Car Rental, Inc.,* unpub. op. (M.D.Fl.1985). Therefore, the mark warrants trademark protection. Sand Dollar's addition of the word "sand" as a prefix to "dollar" does not diminish the recognition of the term "dollar." Instead, use of the mark "Sand Dollar" creates a likelihood of confusion between itself and Dollar's federally registered mark.

15. Even if the Court were to assume that Dollar's mark was at one time merely descriptive,[2] through years of advertising Dollar's mark, "DOLLAR," has come to be associated with Dollar in the car rental business. Accordingly, while Dollar's mark may have originally been descriptive, the mark now has a secondary meaning and is entitled to protection.[3]

16. *Similarity of the Two Marks.* "DOLLAR" is the dominant word in Dollar's mark. Although "sand" and "dollar" are given equal emphasis in Sand Dollar's mark, the Court finds that the marks are nonetheless similar in appearance. Both marks rely on the word "dollar" and use it in conjunction with the terms "car rental" and "rent a car."

17. Further, the Court concludes that while the color schemes and logos for the parties' marks are not the same, this distinction makes little difference because the terms in the service marks are similar in sound and would likely cause confusion when used in oral communication or an oral advertisement. Moreover, at times the parties' marks appear in advertisements like the Yellow Pages which do not permit the use of colors schemes.

---

1. See, *Dieter v. B & H Industries of Southwest Florida,* 880 F.2d 322 (11th Cir.1989), for a complete explanation on generic and arbitrary marks.

2. If "Dollar" were deemed to be a descriptive, Sand Dollar could not challenge the mark as weak because it is incontestable. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

3. The record does not indicate whether the United States Patent and Trademark Office considered Dollar's mark to be descriptive or suggestive.

18. *Similarity of Services.* The Court finds that Sand Dollar's and Dollar's services are practically identical. Both corporations compete in the car rental market. Both seek the business of consumers who have drivers' licenses and want to rent a vehicle. The fact that Sand Dollar generally rents to drivers who pay by cash and Dollar generally rents to drivers who pay by credit is irrelevant since both businesses will rent to drivers who pay by either cash or credit card. Further, both businesses rent to commercial or leisure travellers, to military personnel, and to those who need a rental vehicle while their car is being repaired.[4] The services offered by Sand Dollar and Dollar are so similar that the Court concludes that they are likely to cause confusion among consumers who rent vehicles.

19. *Similarity of Advertising.* Although Dollar expends a substantially greater amount of resources on marketing and advertising than Sand Dollar, the similarity of the advertising in the Columbia area is sufficiently alike to result in a likelihood of confusion. Both businesses advertise in the Columbia Yellow Pages; both businesses have marketed customers in the Northeastern United States; both have advertised on local radio and television programs and in local newspapers. Moreover, Sand Dollar and Dollar have both used similar advertising slogans.

## CONCLUSION

The Court finds that due to the strength of Dollar's mark and the similarity of the parties' marks, services, and advertising, there is a likelihood of confusion between Dollar's and Sand Dollar's service marks. Therefore, the Court concludes that Sand Dollar's mark infringes upon Dollar's federally registered mark. Consequently, the Court concludes that by using an infringing mark, Sand Dollar has unfairly competed with Dollar. *John Walker & Sons, Ltd., supra.*

It is therefore ordered that judgment be entered for Dollar and against Sand Dollar and McIntosh on each of the three causes of action. It is further ordered that Sand Dollar and McIntosh are permanently enjoined and restrained from using the service mark or logo "Sand Dollar" Car Rental or any similar mark or logo in connection or in relation to their car rental business. Within ninety (90) days of the date of this order, Sand Dollar and McIntosh shall remove all signs, including bumper stickers and license plates, bearing reference to Sand Dollar Car Rental from their properties. Within ninety (90) days Sand Dollar and McIntosh shall also cease using any forms, letterhead, papers, or other business supplies bearing reference to Sand Dollar Car Rental. Finally, within thirty (30) days of the date of this order, Sand Dollar and McIntosh shall notify the publishers of the Yellow Pages in which they advertise that all references to Sand Dollar Car Rental shall be deleted from the next printed edition.

IT IS SO ORDERED.

---

4. Sand Dollar admitted it would provide taxi service and one-way taxi fare either from the Columbia airport to its business or from its business to the airport.